

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-177-JG

PATRICE WASHINGTON, )
)
    Plaintiff, )
)
v. )     **ORDER**
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
    Defendant. )

In this action, plaintiff Patrice Washington ("plaintiff" or, in context, "the claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 20, 23). Each party filed a memorandum in support of its motion (D.E. 20-2, 24). With the consent of the parties, the motions were reassigned to the undersigned Magistrate Judge for disposition pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (*See* D.E. 16, 17; Text Ord. dated 3 Nov. 2015). For the reasons set forth below, plaintiff's motion will be allowed, the Commissioner's motion will be denied, and this case will be remanded for further proceedings.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

## BACKGROUND

I. **Case History**

Plaintiff filed applications for DIB and SSI on 17 August 2011, alleging a disability onset date of 9 August 2011. Transcript of Proceedings ("Tr.") 15. The claims were denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 15. On 27 November 2013, an ALJ held a video hearing, at which plaintiff was the sole witness. Tr. 30-47. On 9 April 2014, the ALJ issued a decision finding that plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. 15-24. Plaintiff timely requested review by the Appeals Council (Tr. 8), but it denied review on 30 June 2015 (Tr. 4-7). Plaintiff commenced this proceeding for judicial review on 19 August 2015, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 4); Compl. (D.E. 5)).

II. **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results

2
Case 7:15-cv-00177-JG   Document 25   Filed 08/30/16   Page 2 of 15

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations ["the listings"]; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[2] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[3]
>
> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.
>
> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2);

---

[2] *See also* 20 C.F.R. § 404.1545(a)(1).

[3] *See also* 20 C.F.R. § 404.1545(a)(2).

416.1429.[4] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### III. ALJ's Findings

Plaintiff was 47 years old on the alleged onset date of disability and 50 years old on the date of the hearing. Tr. 22 ¶ 7. He thereby changed from the younger individual category to the closely approaching advanced age category during the alleged period of disability. Tr. 22 ¶ 7; *see* 20 C.F.R. §§ 404.1563(c), (d), 416.963(c), (d). The ALJ found that he has at least a high school education (Tr. 23 ¶ 8) and past relevant work as a furniture mover (Tr. 22 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. Tr. 17 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease and degenerative joint disease of the left knee. Tr. 17 ¶ 3. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 17 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform medium work, subject to limitations. Tr. 18 ¶ 5. Medium work involves lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, and standing or walking for a total of about 6 hours in an 8-hour workday.[5] 20 C.F.R. §§ 404.1567(c), 416.967(c); Soc. Sec. Ruling 83-10, 1983 WL 31251, at *6

---

[4] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

[5] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "M-Medium Work," http://www.oalj.dol.gov/libdot.htm (last visited 30 Aug. 2016). "Medium work" and the other

¶ 3 (1983). The ALJ found plaintiff limited to "frequently climbing ramps and stairs, ladders, ropes, and scaffolds; and frequently kneeling and crawling." Tr. 18 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing his past relevant work. Tr. 22 ¶ 6. At step five, the ALJ determined that Medical-Vocational Rules 203.29 (younger individual category) and 203.22 (closely approaching advanced age category) directed a conclusion of "not disabled." Tr. 23 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the alleged onset date of disability, 9 August 2011, through the date of the decision, 9 April 2014. Tr. 23 ¶ 11.

IV. **Standard of Review**

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.

---

terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

After careful consideration of the record and applicable law, the court concludes that there are two errors in the ALJ's decision that require remand of this case for further administrative proceedings. One error concerns the ALJ's handling of plaintiff's obesity. The other is his reliance on Medical-Vocational Rules at step five of the sequential analysis to direct a conclusion. Because these errors are dispositive of this appeal, the court will limit its discussion to them.

I.  **ALJ's Handling of the Issue of Plaintiff's Obesity**

Plaintiff argues that the ALJ failed to consider his obesity at step three of the sequential analysis. The court finds that the ALJ failed to properly handle the issue of plaintiff's obesity not only at step three, but throughout his decision.

Social Security Ruling 02-1p provides in general terms that if a claimant is obese, the obesity must be considered at each step of the sequential analysis after the first step. *See* Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *3 ¶ 3 (12 Sept. 2002). A determination of obesity may be based on the calculation of a person's body mass index or BMI. *See id.* at *2 ¶ 1. BMI, a measure of overweight and obesity, equals the ratio of an individual's weight in kilograms to the square of his or her height in meters. *Id.* (citing Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (NIH Publication No. 98-4083, September 1998)). The formula for calculation of BMI in the American system is the ratio of an individual's weight in pounds times 703 to the square of his or her height in inches. Centers for Disease Control and Prevention, "About Adult BMI/How is BMI Calculated?," https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/ (last visited 30 Aug. 2016). The threshold for obesity is a BMI of 30.0. Soc. Sec. Ruling 02-1p, 2000 WL 628049, at *2 ¶ 1. Obesity in combination with other impairments may, but does not necessarily, increase the severity or functional limitations of the other impairments, including musculoskeletal impairments. *See id.* at *3 ¶ 2; *5 ¶ 7; *6 ¶ 7.

An ALJ's determination that a claimant is obese may be based on a diagnosis of obesity by a treating source or consultative examiner or, in the absence of a diagnosis, on the ALJ's own judgment about the presence of obesity based on the medical findings and other evidence of record. *Id.* at *3 ¶ 4. The ALJ must explain how he reached his "conclusions on whether obesity caused any physical or mental limitations." *Id.* at *7 ¶ 8.

Here, the heights and weights reported for plaintiff in medical records, including during the period of alleged disability, consistently equated to or were stated as producing a BMI at the obese level, with but one exception. These reports, in chronological order, are as follows:

7

| Date | BMI[6] | Weight | Height[7] | Source | Tr. |
|---|---|---|---|---|---|
| 9 Mar. 2010 | *32.4* | 252 lbs. 2 ozs. | *74 in.* | Wilmington Health | 323 |
| 12 Jan. 2011 | 35.43 | 276 lbs. | 74 in. | Wilmington Primary Care, P.A. | 348 |
| 3 Feb. 2011 | *34.3* | 267 lbs. | *74 in.* | Wilmington Primary Care, P.A. | 352 |
| 23 Feb. 2011 | *34.3* | 267 lbs. | *74 in.* | Wilmington Primary Care, P.A. | 354 |
| 5 Apr. 2011 | 32.48 | 253 lbs. | 74 in. | Wilmington Primary Care, P.A. | 356 |
| 17 May 2011 | *31.7* | 247 lbs. | *74 in.* | Wilmington Primary Care, P.A. | 358 |
| 7 June 2011 | 31.45 | 245 lbs. | 74 in. | Wilmington Primary Care, P.A. | 360 |
| 31 Oct. 2011 | *33.6* | 255 lbs. | 73 in. | Ayman Gebrail, M.D., State Agency Consulting Examiner | 371 |
| 10 Feb. 2012 | *33.2* | 255 lbs. | 73.5 in. | Dr. Gebrail | 387 |
| 13 Feb. 2012 | *32.1* | 250 lbs. | *74 in.* | Wilmington Health | 381 |
| 18 Apr. 2012 | *30.4* | 237 lbs. | *74 in.* | Wilmington Primary Care, P.A. | 421 |
| 12 July 2012 | 29.4 | 229 lbs. | *74 in.* | Wilmington Primary Care, P.A. | 425 |
| 11 Sept. 2012 | *30.3* | 236 lbs. | *74 in.* | Wilmington Primary Care, P.A. | 428 |
| 9 Jan. 2014 | *33.3* | 259 lbs. | 73 in. | Dr. Gebrail | 432 |

Significantly, at plaintiff's visit at Wilmington Health on 9 March 2010, prior to the alleged disability onset date in August 2011, plaintiff was diagnosed with obesity based on the reported weight of 252 pounds, 2 ounces, equating to a BMI of 32.4, assuming a height of 74 inches. Tr. 323. During the period of alleged disability, plaintff was regularly reported as weighing at least this much or within five pounds of it, which would still be at the obese level, as the above table indicates.

In visits with Wilmington Health on 9 and 10 April 2010, it was noted that plaintiff had a history of obesity. Tr. 317, 319.

---

[6] Where the BMI was not provided in the record cited, the court calculated it using the BMI calculator on the website of the National Institutes of Health, http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited 30 Aug. 2016). The BMIs calculated by the court are italicized.

[7] Where the height was not provided in the record cited, the court assumed it to be 74 inches, apparently the tallest height reported for plaintiff and therefore the most conservative figure to use. The height of 74 inches when presumed is stated in italics.

Plaintiff himself reported his weight at the obese level in his disability report of 17 August 2011—namely, 250 pounds at a height of 74 inches. Tr. 238 ¶¶ 3.B, 3.C. This equates to a BMI of 32.1.

Possibly relying on this figure, the disability determination explanations at the initial review level, dated 16 November 2011 (Tr. 48, 57, 66, 76), and at the reconsideration review level, dated 1 August 2012 (Tr. 88, 100), reported the same weight and height for plaintiff. The explanation at the initial level was completed by a single decision maker ("SDM"), but a consulting physician, Robert Gardner, M.D., completed the medical portion of the explanation at the reconsideration level.

The findings by Dr. Gardner, as well as those in the SDM's determination explanation, included a reference to this notation of plaintiff's history of obesity. Tr. 51, 60, 69, 79, 94, 106. In fact, Dr. Gardner deemed plaintiff's obesity to be of such significance that he found it to be a severe medically determinable impairment. Tr. 95, 107.

The continuity of evidence that plaintiff was obese obviously tends to substantiate that he is obese. Social Security Ruling 02-1p provides:

> When deciding whether an individual has obesity, we will also consider the individual's weight over time. We will not count minor, short-term weight loss. We will consider the individual to have obesity as long as his or her weight or BMI shows essentially a consistent pattern of obesity.

Soc. Sec. Ruling 02-1p, 2002 WL 34686281, at * 4 ¶ 4 (footnote omitted).

Moreover, indicia that plaintiff is obese are present throughout the record. This is decidedly not a case in which the ALJ had to find the proverbial obesity needle in an evidentiary haystack.

In addition, the impairments the ALJ found plaintiff to have, both of a musculosketal nature, are obviously subject to potential aggravation by obesity. The same is true for the

limitations the ALJ found plaintiff to have, which relate to the ability to climb, kneel, and crawl. These and the other considerations noted cried out for the ALJ to consider and make findings regarding the issue of plaintiff's obesity.

Nonetheless, the ALJ makes no express mention of the issue of plaintiff's obesity. His only explicit reference to plaintiff's weight is the observation that at plaintiff's 7 June 2011 visit at Wilmington Primary Care "[i]t was noted that the claimant had lost 30 pounds in the past 5 months." Tr. 20 ¶ 5. What the ALJ does not say is that plaintiff weighed 245 pounds at that visit, giving him a BMI of 31.5, which, of course, continued to place him at the obese level. Tr. 360. Moreover, although the ALJ stated that he gave "signficant weight" to Dr. Gardner's opinions, he nowhere resolves the apparent conflict between that finding and his silence on the issue of plaintiff's obesity.[8] Tr. 22 ¶ 5. The ALJ's statement that he "considered the combined effects of the claimant's impairments" and like general statements in his decision fail to establish how he resolved the issue of plaintiff's obesity or that he even considered it at all. Tr. 18 ¶ 4.

The court recognizes, as the ALJ stresses,[9] that there is a gap in the medical records between September 2012 (Tr. 428) and January 2014 (Tr. 432). But, as the prior review of the evidence that plaintiff is obese indicates, there are medical records and other evidence showing plaintiff to be obese on all but one occasion in the over year-long period between the alleged onset of disability in April 2011 and September 2012. *See, e.g.*, Tr. 238, 428. And on that one

---

[8] The note on plaintiff's visit at Wilmington Primary Care, P.A. on 12 January 2011 appears to discount plaintiff's BMI on the basis of his build. The note states that "BMI is 35, however he is quite muscular in build." Tr. 348. If this finding played any role in the ALJ's handling of the issue of plaintiff's obesity, he does not indicate so. *See* Soc. Sec. Ruling 02-1p, 2002 WL 34686281, at *2 ¶ 1 ("[S]omeone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle. However, in most cases, the BMI will show whether the individual has obesity.").

[9] The ALJ stated: "The record indicates that the claimant received no further medical treatment after September 11, 2012. This is inconsistent with chronic pain and disability." Tr. 21 ¶ 5. He also stated: "[T]he claimant's lack of all medical treatment from September 2012 until the date of this decision is completely inconsistent with chronic disabling pain." Tr. 22 ¶ 5.

occasion, of course, his BMI fell just shy of the obese level, equalling 29.4. Tr. 425. The next report on plaintiff's weight after the September 2012 report, the report on 9 January 2014, also placed plaintiff at the obese level—weighing 259 pounds at a height of 73 inches, equating to a BMI of 34.2.[10] Tr. 432. There is also, of course, significant evidence of obesity before the alleged onset of disability.

In the absence of any discussion by the ALJ of the issue of plaintiff's obesity, the court cannot say that his decision is supported by substantial evidence. The ALJ's silence precludes meaningful review of his decision. The ALJ's erroneous handling of the issue of plaintiff's obesity accordingly requires remand.

## II. ALJ's Use of the Medical-Vocational Rules to Direct a Conclusion of Not Disabled

Plaintiff argues that he has nonexertional limitations that preclude use of the Medical-Vocational Rules at step five of the sequential analysis to direct a conclusion in his case. The court agrees that use of Medical-Vocational Rules to direct a conclusion was erroneous.

The Medical-Vocational Rules, also referred to the Medical-Vocational Guidelines or grids, are set out in 20 C.F.R. pt. 404, subpt. P, app. 2. They are a set of rules that specify a conclusion as to whether or not a claimant is disabled. *See generally* Medical-Vocational Rule 200.00(a); Soc. Sec. Ruling 83-10, 1983 WL 31251. The Medical-Vocational Rules are grouped by RFC for the various strength or exertional levels under the Regulations, name, sedentary, light, medium, and heavy or very heavy work. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills).

---

[10] As the ALJ recited, plaintiff testified that "[h]is insurance was cancelled in 2012." Tr. 19 ¶ 5; 40, 45. It is well established that "a claimant may not be penalized for not seeking treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Nevertheless, the ALJ cited plaintiff's lack of treatment after September 2012 as a basis for discrediting his credibility. *See, e.g.*, Tr. 21 ¶ 5; 22 ¶ 5. The ALJ does not expressly resolve the issue of plaintiff's ability to afford treatment. The Commissioner should address the issue directly on remand.

"Where the findings of fact made with respect to a particular individual's vocational factors and [RFC] coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Medical-Vocational Rule 200.00(a). Use of a vocational expert to establish the availability of jobs to the claimant is therefore not necessary in such cases.

"However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the [Medical-Vocational Rules] are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations." *Id.* (e)(ii); *see generally* Soc. Sec. Ruling 83-14, 1983 WL 31254 (1983). In such cases, use of a vocational expert may be helpful, if not necessary, to establish the availability of jobs to the claimant. Soc. Sec. Ruling 83-14, 1983 WL 31254, at *4; *see Guyton v. Colvin*, No. 7:15–CV–00059–FL, 2016 WL 716515, at *5 (E.D.N.C. 5 Feb. 2016) ("The Grids may still be relied upon to find a claimant is not disabled where non-exertional impairments, even severe ones, do not significantly reduce a claimant's occupational base." (citing *Ortiz v. Sec'y of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989)), *mem. & recommend. adopted by* 2016 WL 737904 (23 Feb. 2016).

Here, the ALJ found that plaintiff was subject to the nonexertional, postural limitations of "frequently climbing ramps and stairs, ladders, ropes, and scaffolds; and frequently kneeling and crawling" and therefore could not perform a full range of medium work. Tr. 18 ¶ 5. He

nevertheless determined that a conclusion of "not disabled" was directed by Medical-Vocational Rules 203.29 and 203.22. Tr. 23 ¶ 10. He reasoned as follows:

> The additional [postural] limitations have little or no effect on the occupational base of unskilled medium work. A finding of "not disabled" is therefore appropriate under these rules. The postural limitations would not significantly erode the medium occupational base, SSR 85-15, and the limitation on climbing ladders would not significantly erode the medium occupational base. SSR 83-14.

Tr. 23 ¶ 10.

Consistent with the ALJ's decision, Social Security Ruling 83-14 provides that limitations in "the ability to ascend or descend ladders and scaffolding, kneel, and crawl . . . would not significantly affect the occupational base." Soc. Sec. Ruling 83-14, 1983 WL 31254 at *5 (1983). This ruling is silent on limitations in the ability to climb ramps and, except in the context of visual impairments posing a hazard to the claimant or others, stairs.

Social Security Ruling 85-15 echoes Social Security Ruling 83-14 regarding the impact of limitations on kneeling and crawling:

> [C]rawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).

Soc. Sec. Ruling 85-15, 1985 WL 56857, at *7 ¶ 2.b (1 Jan. 1985).

With respect to climbing, as well as balancing, Social Security Ruling 85-15 states:

> Limitations in climbing and balancing can have varying effects on the occupational base, depending on the degree of limitation and the type of job. Usual everyday activities, both at home and at work, include ascending or descending ramps or a few stairs and maintaining body equilibrium while doing so. These activities are required more in some jobs than in others, and they may be critical in some occupations. Where a person has some limitation in climbing and balancing and it is the *only limitation*, it would *not ordinarily* have a significant impact on the broad world of work. Certain occupations, however, may be ruled out; e.g., the light occupation of construction painter, which requires climbing ladders and scaffolding, and the very heavy occupation of fire-fighter, which sometimes requires the individual to climb poles and ropes. Where the

effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a [vocational expert or other vocational specialist] may be necessary.

*Id.* at *6 ¶ 2.a (emphasis added).

Thus, limitation in climbing and balancing does not "ordinarily" have a significant impact on the occupational base if it is "the only limitation." *Id.* Here, climbing is not, of course, the only limitation plaintiff was found to have; he was also found to have limitations in kneeling and crawling. While under Social Security Ruling 85-15 limitation in the ability to kneel and crawl itself does not significantly affect the occupational base, the ruling does not eliminate the possiblity that such limitation could be significant in combination with other limitations. Moreover, there remains the open question of the extent to which, if any, obesity imposes functional limitations on plaintiff. Obesity could manifestly limit a person's ability to climb ramps and stairs, particularly a person with the impairments of degenerative disc disease and degenerative joint disease of a knee, as plaintiff was found to have.

The court therefore cannot say that the ALJ's reliance on the Medical-Vocational Rules to direct a conclusion of not disabled, as opposed to using them as a framework for decision making, was proper. The case must accordingly be remanded for a proper step five analysis.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that plaintiff's motion (D.E. 20) for judgment on the pleadings be GRANTED, the Commissioner's motion (D.E. 23) for judgment on the pleadings be DENIED, and this case be remanded for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g). In making this ruling, the court expresses no opinion regarding the weight to be accorded any evidence, which is a matter for determination by the Commissioner.

SO ORDERED, this 30th day of August 2016.

_____
James E. Gates
United States Magistrate Judge